IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF VIRGINIA
Richmond Division

| | |
|---|---|
| NOEL BRALLEY, et al., ) | |
| ) | |
| Plaintiffs, ) | |
| ) | |
| v. ) | CIVIL NO. 3:10cv138-REP |
| ) | |
| MARK A. CAREY, et al., ) | |
| ) | |
| Defendants. ) | |
| ) | |

### REPORT AND RECOMMENDATION

This matter is before the Court for a report and recommendation pursuant to 28 U.S.C. § 636(b)(1)(B) on the Plaintiffs' Motion for Attorney's Fees and Costs (ECF No. 46)  For the reasons set forth herein, it is the Court's recommendation that the Plaintiffs' motion be GRANTED.

### I. BACKGROUND

The Plaintiffs, Noel Bralley, Carolyn Bralley, and Braxton Bralley (the "Plaintiffs") initiated this action against, Mark A. Carey, Esq. ("Defendant Carey"), his law firm, The Law Office of Mark A. Carey, P.C. (collectively with Defendant Carey, the "Defendants"), and a number of other defendants who have been dismissed from the case.  In their Complaint, the Plaintiffs allege violations of the Fair Debt Collection Practice Act ("FDCPA"), 15 U.S.C. §§ 1692 – 1692p; Violations of the Virginia Consumer Protection Act, Va. Code §§ 59.1-196 – 59.1-207; and violation of Virginia's usury law forbidding the charging of interest at a rate greater than twelve percent (12%) per year, Va. Code § 6.1-330.55.

A.     **Settlement and Post-Judgment Procedural History**

Through authorized counsel for both parties, a verbal settlement was achieved. However, Defendant Carey objected to certain terms that were added in the proposed written memorialization, including a release of the Plaintiffs, consent to entry of judgment for unpaid amounts, and a provision entitling the Plaintiffs to attorney's fees that would accrue in the event that it became necessary to reinstate the matter on the Court's docket to effect collection on any judgment.[1]  In a Memorandum Opinion entered on November 12, 2010, the District Court concluded that Defendant Carey had, in fact, authorized counsel to settle the matter, including the disputed terms.  Accordingly, the Court entered judgment on the settlement.

Subsequently, counsel for the Defendants withdrew from the case and the Defendants have become, for lack of a better term, "elusive."  After repeated attempts to engage in post-judgment discovery, the Plaintiffs moved this Court for an order compelling discovery, which was granted on March 22, 2011 after the Defendants failed to respond (ECF No. 37).  In the Order, the Court granted attorney's fees to the Plaintiff in connection with the enforcement effort, as authorized pursuant to the FDCPA, 15 U.S.C. § 1692k(a)(3).  Accordingly, the Court instructed Plaintiffs' counsel to submit an affidavit of counsel and petition in favor of the fee award.[2]  It was initially the Court's intention to await the completion of enforcement efforts before assessing the full value of such fees.  Nevertheless, on July 15, 2011, the Plaintiffs moved for attorney's fees of twenty-seven thousand two-hundred ninety-six and 56/100 dollars ($27,296.58).

---

[1] Although the settlement terms might offer an additional basis for recovery of attorney's fees in this case, this Court has instead relied on statutory authority to do so (i.e. 15 U.S.C. §1692k(a)(3)).

[2] Because the Court has already determined that attorney's fees are proper, the sole issue here is the amount of such a fee, which the Court must review for reasonableness.

Since the Plaintiffs first requested attorney's fees, the Court has observed documented examples of post-judgment evasiveness by the Defendants, including at least one misrepresentation to the Court. Specifically, the Defendants indicated that they never received any previous post-judgment Orders in the case (*Ex Parte* letter to the Court, ECF No. 50), although Defendant Carey had previously contacted the Clerk's Office and confirmed an address that had been used throughout the post-judgment proceedings, both by the Clerk's Office and Plaintiffs' counsel. (ECF Docket Entry dated June 20, 2011.) The Court thereupon entered a Show Cause Order (ECF No. 42), obtained *ex parte* communications from the Defendants (ECF Nos. 49, 50), and after finally hearing from the Defendants, offered them a final opportunity to comply with the Court's prior mandates in order to avoid possible civil contempt (ECF No. 53). However, they have declined to take advantage of the "final opportunity" to comply. (See Order dated Sept. 13, 2011, ECF No. 59.)

Based on such post-judgment procedural history, the Court has concluded that the Defendant will not soon satisfy the judgment and, as a result, significant additional costs and attorney's fees may accrue to Plaintiffs' counsel. Moreover, the Court notes that it invited the Defendants to challenge the Plaintiffs' request for fees within fourteen (14) days of a previous Order (ECF No. 53) entered by this Court well over one month ago. Not having received any response from the Defendants, the Court considers it appropriate to address the pending petition for attorney's fees at this juncture.

**B.     Attorney's Fees and Costs**

Attorney Dale W. Pittman ("Pittman"), lead counsel for the Plaintiffs in this matter, expended a total of 52.3 hours of time attempting to enforce the judgment at a rate of four-hundred twenty-five and 00/100 dollars per hour ($425.00/hour), for a total fee of twenty-two

3

thousand two-hundred twenty-seven and 50/100 dollars ($22,227.50). Additionally, because the Defendants have relocated to Georgia and become difficult to deal with, Pittman was required to associate local counsel in Georgia -- Kris Skaar ("Skaar"). Skaar spent a total of 10.6 hours attempting to enforce the judgment at a rate of three-hundred forty-five and 00/100 dollars per hour ($345.00/hour) for a total of three-thousand six-hundred fifty-seven and 00/100 dollars ($3,657.00). Finally, Pittman's paralegal, Karen Graham ("Graham"), spent a total of 7.5 hours of her time on the matter at a rate of one-hundred twenty-five dollars per hour ($125.00/hour) for a total of nine-hundred thirty-seven and 50/100 dollars ($937.50). The total fee for all of the services rendered is twenty-six thousand eight-hundred twenty-two and 00/100 dollars ($26,822.00). In addition, there is a total of four-hundred seventy-four and 58/100 dollars ($474.58) in related costs and expenses, resulting in a total request of twenty-seven thousand two-hundred ninety-six and 58/100 ($27,296.58).

In support of the petition, the Plaintiffs have submitted a Declaration by Pittman verifying all of the above-listed expenditures. (Pittman Decl., ECF No. 61.) Moreover, as Pittman has noted in his Declaration, the Court has recently found his rates to be reasonable for the relevant professional market. See Randle v. H&P Capital, Inc., No. 3:09cv608, 2010 U.S. Dist. LEXIS 74994, at *19, *33 (E.D. Va. July 21, 2010), adopted in relevant part 2010 U.S. Dist. LEXIS 101509 (E.D. Va. Sept. 23, 2010).

## II. STANDARD OF REVIEW

A trial court's award of attorney's fees is reviewed for an abuse of discretion. EEOC v. Cent. Wholesalers, Inc., 573 F.3d 167, 178 (4th Cir. 2009) (citation omitted). Such a review is "sharply circumscribed" because federal appellate courts recognize that the trial court "has close intimate knowledge of the efforts expended and the value of the services rendered." Plyler v.

4

Evatt, 902 F.2d 273, 277-78 (4th Cir. 1990). Nevertheless, the discretionary award must be granted "on a principled basis, clearly explained by the court." Lyle v. Food Lion, Inc., 954 F.2d 984, 989 (4th Cir. 1992). Typically, "[t]he most useful starting point for determining the amount of a reasonable [attorney's] fee" involves the product of reasonably expended hours multiplied by the reasonable hourly rate -- the lodestar. Hensley v. Eckerhart, 461 U.S. 424, 433 (1983); Pennsylvania v. Del. Valley Citizens' Council for Clean Air, 478 U.S. 546 (1986).

Although the "lodestar" is a presumptively reasonable fee, see Blum v. Stenson, 465 U.S.886, 897 (1984), courts are also guided by twelve factors set forth in Johnson v. Georgia Highway Express, Inc., 488 F.2d 714, 171-19 (5th Cir. 1974). See Barber v. Kimbrell's, Inc., 577 F.2d 216, 226 (4th Cir. 1978) (adopting the Johnson factors). Those factors are: (1) the time and labor required; (2) the novelty and difficulty of the matter; (3) the skill required to perform the legal services; (4) the preclusion of other employment; (5) the customary fee in like cases; (6) whether the fee is fixed or contingent; (7) any time limitations imposed; (8) the amount involved and results obtained; (9) the experience, reputation, and ability of the attorneys involved; (10) the undesirability of accepting the representation; (11) the nature and length of the attorney-client relationship involved; and (12) awards in like cases. Johnson, 488 F.2d at 717-19. Application of these factors does not amount to a "strict formula." Trimper v. City of Norfolk, 846 F. Supp. 1295, 1303 (E.D. Va. 1994). Moreover, because "many of these factors usually are subsumed within the initial calculation of" the lodestar, Hensley, 461 U.S. at 434 n.9, the lodestar fee is the proper focal point when determining an attorney's fee award. Daly v. Hill, 790 F.2d 1071, 1078 (4th Cir. 1986).

## III. DISCUSSION

Initially, the requested award appears to be somewhat high for post-judgment recovery efforts where the amount of the judgment is but fifteen thousand dollars ($15,000.00). However, based on the Court's familiarity with the record, it is clear that any future recovery for the Plaintiffs would be unlikely but for the persistence of counsel. Thus, the Court's own "intimate knowledge of the efforts expended" will be the determinative factor in assessing the requested fees. Plyler, 902 F.2d 273 at 277-78. Specifically, the Court is well-aware of the amount of time and labor that has been required as a result of the Defendants' evasive conduct.

One factor that is often given considerable significance in scrutinizing fee awards is the result obtained by the attorney whose fees are at issue. See, e.g., Pellegrin v. Nat'l Union Fire Ins., 605 F.3d 238, 245 (4th Cir. 2010). Although the Court is aware of no actual recovery of any portion of the judgment proceeds to date, the Plaintiffs have finally been able to identify at least some of the Defendants' available assets and coerce at least some level of response from Defendant Carey, though the response remains inadequate (ECF No. 59). Such zealous efforts may ultimately prove to be futile in obtaining a full recovery, but the Court cannot fault counsel for aggressively pursuing satisfaction of his clients' judgment.

The Court has conducted a full review of the billing records submitted by the Plaintiffs and finds that the hours expended are reasonable. Attorney Pittman has been forced to contact numerous lawyers involved in related matters in New York and Georgia, and ultimately was required to associate local counsel in Georgia. His collection efforts have been the subject of motions to quash in the U.S. District Court for the Northern District of Georgia, and he has been forced to retain private process servers in order to determine the whereabouts of Defendant

Carey. All the while, he apparently could not confirm Defendant Carey's physical address until June 20, 2011, approximately seven (7) months after initially undertaking collection efforts.

The critical factor in this case is the Court's own familiarity with Defendant Carey's evasiveness and the multi-jurisdictional component of enforcement in this case. See Plyler, 902 F.2d 273 at 277-78. As has been summarized above, and as more fully set forth in this Court's recently issued Show Cause Order (ECF No. 59), Defendant Carey has failed to abide by this Court's post-judgment discovery orders (ECF No. 59); misrepresented his whereabouts to the Court (compare ECF Entry dated June 20, 2011 with Letter from Defendant Carey dated July 7, 2011, ECF No. 50); and, in the process, has attempted an improper *ex parte* communication with the Court (ECF Nos. 49, 50). Thus, it is clear to the Court that Defendant Carey is conducting himself in bad faith, and the Court is therefore satisfied that the effort expended by Plaintiffs' counsel was necessary.

Having determined that the total hours expended were reasonable, the only remaining question is whether the rates at issue are reasonable. As previously noted, the Court has already determined in another case that the same rates are reasonable. Randle, 2010 U.S. Dist. LEXIS 74994, at *19, *33, adopted in relevant part 2010 U.S. Dist. LEXIS 101509. Having received no objection from the Defendants, and perceiving no reason to overrule the Court's earlier finding, the Court concludes that the rates at issue are reasonable.

By his own apparently contemptible conduct, Defendant Carey is inflating the Plaintiffs' attorney's fees, which he himself will ultimately pay. As an attorney, Defendant Carey ought to be well-aware of the consequences of his actions. This is especially true where, as here, the defendant in question is a collections attorney who has presumably engaged in similar efforts on behalf of his own clients in the past. It should come as no surprise to him, therefore, that his

evasiveness has increased the amount of the Plaintiffs' attorney's fees. While Defendant Carey has failed to file any opposition or objection to the requested award of attorney's fees at issue, the Court *strongly encourages* Defendant Carey to quickly alter his approach so as to cooperate more fully with the Plaintiffs' post-judgment discovery efforts and come into compliance with this Court's previous Orders.

Because the hours and costs expended are reasonable and the rates are reasonable, all that remains is the calculation of the product of those numbers to determine the lodestar. That is exactly what the Plaintiffs have done in calculating their fee request of twenty-six thousand eight-hundred twenty-two and 00/100 dollars ($26,822.00), and, therefore, the Court recommends that the amount be awarded to the Plaintiffs. Moreover, the costs incurred of four-hundred seventy-four and 58/100 dollars ($474.58) appear to be reasonable under all of the circumstances. Thus, the Court concludes that the requested award of twenty-seven thousand two-hundred ninety-six and 58/100 ($27,296.58) is reasonable and ought to be awarded to the Plaintiffs.

## IV. CONCLUSION

In conclusion, and for the reasons discussed herein, it is the recommendation of this Court that the Plaintiffs' Motion for Attorney's Fees and Costs (ECF No. 46) be GRANTED and, accordingly, that the Plaintiffs be AWARDED a sum of twenty-seven thousand two-hundred ninety-six and 58/100 ($27,296.58). Moreover, recognizing the ongoing nature of enforcement, the Court recommends that the Plaintiffs be GRANTED LEAVE to submit further petitions for attorney's fees at appropriate intervals.

Let the Clerk file this Report and Recommendation electronically, notifying all counsel accordingly; transmit by U.S. Mail a copy to all Defendants at their address of record; and forward a copy to the Honorable Robert E. Payne.

**NOTICE TO PARTIES**

**Failure to file written objections to the proposed findings, conclusions and recommendations of the Magistrate Judge contained in the foregoing report within fourteen (14) days after being served with a copy of this report may result in the waiver of any right to a <u>de novo</u> review of the determinations contained in the report and such failure shall bar you from attacking on appeal the findings and conclusions accepted and adopted by the District Judge except upon grounds of plain error.**

                                                          /s/
                                        Dennis W. Dohnal
                                        United States Magistrate Judge

Richmond, Virginia
Dated: <u>September 16, 2011</u>