IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF VIRGINIA
Richmond Division

NOEL BRALLEY,
et al.,

    Plaintiffs,

v.                                     Civil Action No. 3:10cv138

MARK A. CAREY,
et al.,

    Defendants.

**MEMORANDUM OPINION**

This matter is before the Court on *Pro Se* Defendant Mark A. Carey's[1] Rule 60(b)(6) or, Alternatively, Rule 60(d)(1) Action to Set Aside or Vacate Judgment ("Motion to Vacate") (ECF No. 94). For the reasons set forth below, the Motion to Vacate will be denied.

**BACKGROUND**

On March 4, 2010, the Plaintiffs filed this action against Mark A. Carey ("Carey"), the Law Offices of Mark A. Carey, P.C. (the "Carey Law Firm"), several named and John Doe employees of the Carey Law Firm, and FFD Resources III. The Complaint (ECF No. 1) presented claims for violations of the Fair Debt Collection

---

[1] Mark Carey is an attorney, but he is not licensed in Virginia. He is appearing *pro se* on behalf of himself only, not the Defendant Law Offices of Mark A. Carey, P.C.

Practices Act against Carey, the Carey Law Firm, and its employees (both named and John Does). The Complaint alleged other claims against FFD Resources, III, LLC, but those claims were dismissed by stipulation under Fed. R. Civ. P. 41(a)(1)(A)(ii) (ECF No. 11).

In April 2010, over ten years ago and not long after the action was filed, Carey and the Carey Law Firm and Plaintiffs, Noel, Carolyn, and Braxton Bralley settled the claims against Carey and the Carey Law Firm. However, shortly thereafter, Carey and the Carey Law Firm took the view that no settlement had been reached. The Plaintiffs moved to enforce the settlement agreement (ECF No. 12); and, after an evidentiary hearing, the Court issued a decision holding that, in fact, a settlement agreement had been reached, reciting the terms thereof, and ordering that the settlement agreement be enforced. (ECF No. 18). Judgment was entered to that effect (ECF No. 20).

Carey and the Carey Law Firm refused to comply with the terms of the agreed settlement or the judgment requiring that it be enforced. Indeed, the Plaintiffs assert that, since the judgment was entered on November 12, 2010, Carey and the Carey Law Firm have employed a variety of strategies to avoid paying what they have been ordered to pay. (ECF No. 95, p. 1). Numerous entries in the CM/ECF system tend to confirm that assertion. (e.g., ECF Nos. 27, 28, 30, 31, 32, 37, 41, 42, 53, 59, 65, 80).

The most recent evasive action is the *pro se* Motion to Vacate filed by Carey on July 17, 2020. See Mot. to Vacate, ECF No. 94. In something out of a penny dreadful or a B-movie legal thriller, Carey now says that he was defrauded by a former employee who Carey now believes was the person who was illegally attempting to collect on the Plaintiffs' debts.

In particular, Carey says that "[s]oon after the settlement . . . [he] learned the first set of facts that suggested that third party criminal activity occurred as his law firm." (ECF No. 94, p. 4, "Relevant Facts That Became Known To Carey Just After Settlement"). Carey identified the third party to be the Carey Law Firm's Operations Manager, Cozino Lanzetta. Because of Lanzetta's conduct, "Carey immediately contacted Plaintiff's [sic] attorney, advised him of the theft, and asked for a modification of the settlement." Id. Also, Carey filed a police report. Lanzetta was convicted of forgery, identity theft and larceny. Id.

Carey's affidavit also reveals that, before he entered into the settlement in 2010, he and an employee (Chet Dietz) searched the Carey Law Firm's electronic files but found no evidence that the Plaintiffs' "collection account was ever placed with Carey." (ECF No. 94, Ex. 1 AFFIDAVIT OF MARK A. CAREY, ESQ., pp. 24/34). Carey's affidavit also shows that, thusly informed, Carey elected

3

to settle the Plaintiffs' claims. Id. ¶ 16. In other words, Carey settled while armed with knowledge that neither he nor his law firm's employees might not have committed acts making him or the Carey Law Firm liable to Plaintiffs at all (the alleged violations of the Fair Credit Reporting Act).

The record, as presented by Carey, shows that, "just after the settlement," he learned that Lanzetta had been manipulating the Carey Law Firm's electronic records, the search of which provided no evidence that the Plaintiffs' accounts had been the subject of the claims that had just been settled. But the record discloses no further pursuit of the irregularities of which Carey learned "just after the settlement." Indeed, the record shows that about a decade later, Carey, by chance, came upon the evidence he now asserts as "new" and that warrants relief under Rule 60. Specifically, Carey now tells us that, in the second week of February 2020, he had lunch with a former colleague (Frank Scordato) who told Carey that his former employee, Cosimo Lanzetta,[2] had installed a separate server in a closet of unused office space rented by the Carey Law Firm. Lanzetta then connected that server to the computers of the Carey Law Firm which made it

---

[2] It is not directly related to the present claims, but after the settlement was approved, Carey says that he learned that Cosimo Lanzetta also stole all of the money in Carey's business account. Mot. to Vacate at 4, ECF No. 94. Lanzetta was sentenced in New York to serve 1-3 years in jail. Mot. to Vacate at 5, ECF No. 94.

4

appear that the calls to the Plaintiffs were coming from the Carey Law Firm. Mot. to Vacate at 5-6, ECF No. 94.

After that lunch meeting, Scordato called Chet Dietz, another of Carey's former employees, and asked Dietz to tell Carey what Dietz knew. Mot. to Vacate at 6, ECF No. 94. Dietz has filed an affidavit stating that he knew quite a bit more about what happened, but had not told Carey before because "he was afraid of repercussions from the wrongdoers, including the convicted felon, Lanzetta." Mot. to Vacate at 6, ECF No. 94.

In Dietz' affidavit he states, in relevant part:

> [7] A short time after starting his employment with Carey in 2009, Lanzetta urged Carey to lease a smaller office on another floor in the building, allegedly for extra space for equipment and employees.
>
> [8] An extra computer server I set up in the smaller office was "digitally empty" and was never connected to the existing server because there was no business need for it.
>
> [9] Only the phone lines were connected to the main Carey office.
>
> [10] All of the servers used by Carey were owned by me and were only leased to Carey.
>
> [11] After Carey closed the office, I went back to the office to collect my personal belongings and miscellaneous papers and documents from the two offices leased by Carey.
>
> [12] While there, I found the extra server that I had put in the smaller office, hidden in a stock closet, but I had not found that server when Carey and I surveyed the office after it was broken into.

5

> [13] When I retrieved that server, I noticed that it been connected to the computers in that office through a hole in the closet wall, but I didn't really think anything of it at the time.
>
> [14] Thereafter, not wanting to be involved and fearing for my personal safety if I was believed to be siding with Carey in prosecuting Lanzetta, I moved to Texas, where I currently reside.
>
> [15] A few years later, while in Texas and when I was going through old boxes, I discovered more evidence of Lanzetta's criminal activity, a document showing that Lanzetta had - by forging Carey's name - contracted with at least one other debt buyer client to begin collecting other debt portfolios, but the address listed on the document was to an outside correspondence address belonging to Lanzetta, not Carey's address.
>
> [16] Later still, on or around 2015 or 2016, when I sold the remaining server I found, I discovered the final piece of evidence that showed why Carey was mistaken as to his assumption that the Bralley file was one of his.
>
> [17] When I checked the server, I discovered that it was no longer empty, but instead contained collection accounts that I had not loaded into the server.
>
> [18] Because I was the only one authorized to access and load the servers, I reasonably concluded that Mr. Lanzetta had loaded the fraudulently obtained debt portfolio and was illegally collecting on those accounts out of the smaller office.
>
> [20] Lanzetta never obtained authorization from me to install electronic data onto the server in the smaller office and nobody knew nor, because it was not hooked up the main server, could have known he had taken it upon himself to do so.

Mot. to Vacate at 30-33 ("Exhibit 2"), ECF No. 94.

Carey now argues that the judgment approving the settlement agreement should be set aside because it has no basis in fact. See Mot. to Vacate at 10, ECF No. 94 at 10. According to Carey, Plaintiffs' claim should really have been brought against his former employee, Lanzetta, because Carey has no responsibility for what happened to Plaintiffs. He thus asks the Court to vacate a ten year old judgment.

## LEGAL STANDARD

**A.   Fed. R. Civ. Pro. 60(b)(6)**

Federal Rule of Civil Procedure 60(b) states:

> (b) Grounds for Relief from a Final Judgment, Order, or Proceeding. On motion and just terms, the court may relieve a party or its legal representative from a final judgment, order, or proceeding for the following reasons:
>
>> (1) mistake, inadvertence, surprise, or excusable neglect;
>>
>> (2) newly discovered evidence that, with reasonable diligence, could not have been discovered in time to move for a new trial under Rule 59(b);
>>
>> (3) fraud (whether previously called intrinsic or extrinsic), misrepresentation, or misconduct by an opposing party;
>>
>> (4) the judgment is void;
>>
>> (5) the judgment has been satisfied, released, or discharged; it is based on an earlier judgment that has been reversed or vacated; or applying it prospectively is no longer equitable; or

>     (6) any other reason that justifies relief.

Fed. R. Civ. P. 60(b). Rule 60(c)(1) clarifies that a motion made pursuant to Rule 60(b)(1), (2), or (3) must be made within one year, Fed. R. Civ. P. 60(c)(1); however, there is no such limitation for a motion made pursuant to Rule 60(b)(6). See Fed. R. Civ. P. 60(c)(1). A motion pursuant to Rule 60(b)(6) need only be made in a reasonable time. Great Coastal Express, Inc. v. International Brotherhood of Teamsters, 86 F.R.D. 131, 136 (E.D. Va. 1980).

Because Rule 60(b) has five enumerated grounds for relief followed by a catch-all provision allowing for "any other reason justifying relief," Rule 60(b)(6) should be read as "a residuary clause intended to encompass contingencies which could not have been foreseen by the Rule's drafters." Great Coastal Express, Inc. v. International Brotherhood of Teamsters, 86 F.R.D. 131, 136 (E.D. Va. 1980); aff'd Great Coastal Express, Inc. v. International Brotherhood of Teamsters, 675 F.2d 1349 (4th Cir. 1982). That is, "if the reasons offered for relief from judgment could be considered under one of the more specific clauses of Rule 60(b)(1)-(5), those reasons will not justify relief under Rule 60(b)(6)." 12 Moore's Federal Practice § 60.48[2] (Matthew Bender 3d Ed.).

B.  **Fed. R. Civ. Pro. 60(d)(1)**

Federal Rule of Civil Procedure 60(d)(1) clarifies that the preceding paragraphs of Rule 60 do not limit a court's ability to "entertain an independent action to relieve a party from a judgment, order, or proceeding." Fed. R. Civ. P. 60(d)(1). "An independent action in equity is usually a 'new case in the same court or another court possessing jurisdiction.'" Glaser v. Enzo Biochem, Inc., 2011 U.S. Dist. LEXIS 156616, *25 (E.D. Va. Apr. 1, 2011) (citation omitted).

## DISCUSSION

A.  **Fed. R. Civ. Pro. 60(b)(6)**

Carey's position is that he has shown, by way of the so-called new evidence (his and Dietz's affidavits) that there were extraordinary circumstances which justify relief under Rule 60(b)(6). Mot. to Vacate at 10-11, ECF No. 94. That position is without merit.

Carey's story amounts to a claim for relief under Fed R. Civ. P. 60(b)(1) (i.e., "mistake, . . . surprise, or excusable neglect") or Fed R. Civ. P. 60(b) (2) (i.e., "newly discovered evidence that, with reasonable diligence, could not have been discovered in time to move for a new trial under Rule 59(b)"). But, of course, Carey is well-past the one-year limit for bringing claims under Rule 60(b)(1) and (b)(2).

9

Indeed, Carey's papers show that he cannot show either excusable neglect or the exercise of reasonable diligence and he thus could not meet the requirements under Rule 60(b)(1) or (2). Without doubt, Carey has shown that in 2010 he could not find, in the Carey Law Firm's records, evidence that the Plaintiffs' debts had been entrusted to him or his firm for collection. He nonetheless settled the Plaintiffs' claims. And, as Carey puts it, "just after the settlement," he learned that the employee in charge of the Carey Law Firm's operations, including its electronic records, had manipulated the Carey Law Firm's records in committing, inter alia, forgery and identity theft. And, Carey did nothing to pursue the relation between what he knew Lanzetta had done and the inexplicable lack of evidence in those records showing a connection between the Carey Law Firm and the Plaintiffs' debt. Those facts preclude a finding of excusable neglect or reasonable negligence.

Thus, he attempts to shoehorn his story to fit under Fed R. Civ. P. 60(b)(6) (i.e., "any other reason that justifies relief"). However, using Fed R. Civ. P. 60(b)(6) to attempt to dodge the time limits of Fed R. Civ. P. 60(b)(1)-(3) is not permissible. See Great Coastal Express, Inc. v. International Brotherhood of Teamsters, 86 F.R.D. 131, 136 (E.D. Va. 1980). Therefore, the

portion of Carey's Motion to Vacate based on Rule 60(b)(6) will be denied.

In any event, the record recited above shows that Carey's Rule 60(b)(6) motion was not filed in a "reasonable time." So it is time-barred under Rule 60(b)(6) and fails for that additional reason.[3]

**B.    Fed. R. Civ. Pro. 60(d)(1)**

Carey alternatively says that he is entitled to relief under Federal Rule of Civil Procedure 60(d)(1) which allows a court to "entertain an independent action to relieve a party from judgment, order, or proceeding." An "independent action," as used in Rule 60(d)(1) "was meant to refer to a procedure which has been historically known as an independent action in equity to retain relief from a judgment." Bankers Mortg. Co. v. United States, 423 F.2d 73, 78-79 (5th Cir. 1970); see Glaser v. Enzo Biochem, Inc., No. 1:02cv1242, 2011 U.S. Dist. LEXIS 156616 at *25 (E.D. Va. Apr. 1, 2011). In Glaser, the Court explained that "[a]n independent action in equity is usually 'a new case—in the same court or another court possessing jurisdiction.'" Aff'd 328 F. App'x. 873

---

[3] In other words, the same facts that preclude a finding of excusable neglect or reasonable diligence also foreclose a finding that the motion was filed within Rule 60(b)'s "reasonable time" limitation. Moreover, even after the February 2020 lunch meeting, Carey waited until July 2020 to file the instant motion. That certainly does not meet the definition of "reasonable time" either.

11

4th Cir. 2009. Of course, the Motion to Vacate is not an independent action and Carey's suggestion that it be so considered does not convert the motion into an independent action for it simply is not a new case.[4]

But, even if the motion somehow could be considered a new case, Carey is not entitled to relief. To prevail on a motion made under Rule 60(d)(1), the movant must show:

> That the judgment in favor the defendant 'ought not, in equity and good conscience,' be enforced; (2) that he has a 'good' claim; (3) that 'fraud, accident, or mistake,' prevented him from obtaining the benefit of his claim; (4) 'the absence of fault or negligence' on his part; and (5) 'the absence of any adequate remedy of law.'

Great Coastal Express, 675 F.2d at 1358; see also Asterbadi v. Leitess, 176 F. App'x. 426, 430 (4th Cir. 2006). Carey has not met this intentionally stringent requirement.

Considering the entire record in this case, including the allegedly newly discovered evidence presented by Carey, it is quite clear that adequate supervision of the Carey Law Firm and its operations would have disclosed the facts on which Carey now relies in his effort to set aside the judgment. There is nothing equitable about aiding someone who has allowed conditions to exist

---

[4] Usually, a motion under Rule 60(d)(1) is accompanied by the proposed Complaint that would initiate the new case. Carey tendered no such Complaint.

in a law firm to the detriment of people such as the Plaintiffs in this case.

And, even if adequate supervision somehow would not have disclosed the so-called "new evidence," certainly a diligent pursuit of what Carey learned "just after the settlement" (as he puts it) would have uncovered the "new evidence" on which an independent action would rest. This record is bereft of reasonable or diligent follow-up. And that follow-up was warranted given that Carey had been unable to locate a connection with the Plaintiffs' debts in the electronic files of the Carey Law Firm and in the face of the knowledge that Lanzetta had been manipulating those files.[5]

On this record, it cannot be said that Carey has a good claim or that there is an absence of fault or negligence, or that the judgment ought not, in equity and good conscience, be enforced. In sum, the information submitted by Carey falls far short of supporting an independent action in equity, even if Carey had filed one (or the Motion to Vacate could be considered as an independent action).

---

[5] It is no answer that Dietz did not volunteer the information to Carey where, as here, Carey did not even query Dietz about it even after learning of Lanzetta's manipulation of the electronic files, given that Carey knew that he and Dietz had searched for, but had not found, information about the Plaintiffs' debts in those same files.

The Court recognizes that Carey is proceeding *pro se*. And, it is generally the case that a court is required to construe *pro se* pleadings liberally. However, Carey, who is a lawyer, is not entitled to the benefit of this principle. He is, in fact, an attorney, he is just not admitted to practice in Virginia.

## CONCLUSION

For the foregoing reasons, *Pro Se* Defendant Mark A. Carey's Rule 60(b)(6) or, Alternatively, Rule 60(d)(1) Action to Set Aside or Vacate Judgment (ECF No. 94) will be denied.

It is so ORDERED.

/s/ REP
Robert E. Payne
Senior United States District Judge

Richmond, Virginia
Date: March 31, 2021